**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| DAN KINNUNEN, individually, | Case No: |
| Plaintiff, | |
| v. | |
| DOLLAR TREE, INC., a Virginia corporation, | |
| Defendant. | |

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiff, Dan Kinnunen, by and through his attorneys, Melmed Law Group P.C. for his Complaint against Defendant, Dollar Tree, Inc., states as follows:

## <u>PARTIES</u>

1.     Plaintiff, Dan Kinnunen ("Plaintiff"), is an individual who resides in Ishpeming, Michigan.

2.     Defendant, Dollar Tree, Inc. ("Defendant"), is incorporated in the state of Virginia.

3.     Defendant owns a large discount retail chain operating numerous stores throughout the United States, including Michigan.

4.     Defendant is registered to conduct business in the state of Michigan and its registered agent is listed as CSC-Lawyers Incorporating Service, 3410 Belle Chase Way, Ste 600, Lansing, Michigan 48911.

1

## JURISDICTION AND VENUE

5.      This Court has original subject-matter jurisdiction over Plaintiff's claim arising under Title VII of the Civil Rights Act of 1964, 42 § U.S.C. § 2000e, *et seq*.

6.      The Court also has supplemental jurisdiction over Plaintiff's claim arising under the Michigan Elliot-Larsen Civil Rights Act ("ELCRA") pursuant to 28 U.S.C. § 1367 because Plaintiff's ELCRA claim originates from the same facts that form the basis of his federal claim.

7.      Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant conducts business in this District and the events and conduct giving rise to the claims in this lawsuit occurred in this District.

## GENERAL ALLEGATIONS

8.      Defendant employed Plaintiff as an operations manager from approximately December 2022 through October 9, 2023 at its store in Marquette, Michigan.

9.      At all relevant times, Defendant employed Axel Acevido Crespo ("Crespo") as Plaintiff's direct manager and supervisor.

10.      Immediately upon hire, Plaintiff began experiencing a pattern of severe and pervasive sexual harassment by Crespo that lasted for the entire duration of Plaintiff's employment.

11.      Despite numerous complaints and the behavior being open and notorious, Defendant failed to take any action to provide a workplace safe from sexual harassment.

12.      Defendant delayed taking any action on Plaintiff's complaints about Crespo's sexual harassment for weeks after Plaintiff's initial complaint, thereby subjecting Plaintiff to further unnecessary sexual harassment.

13. On a near daily basis, Crespo made sexually harassing and unwelcome comments to Plaintiff including, but not limited to, the following:

    a. Describing sexual acts Crespo had performed on other males, despite Plaintiff informing him that he was not interested in having these sexually inappropriate conversations;

    b. Making sexual remarks to Plaintiff personally while at the workplace;

    c. Sending sexually explicit text messages to Plaintiff; and

    d. Commenting to Plaintiff while at the gym, "[I] would love to watch you work out. Mmmm."

14. Crespo's unwelcome, predatory behavior was persistent, occurring on an almost daily basis. He made sexually harassing and unwelcome comments to Plaintiff throughout the day, nearly every day.

15. Plaintiff also made significant efforts to discourage Crespo from making sexual advances, particularly by repeating that he did not want to engage in Crespo's sexual banter and innuendo.

16. On or about July 29, 2023, Plaintiff filed a complaint regarding Crespo's sexual harassment through Defendant's "Integrity Matters Hotline." Nobody contacted Plaintiff to ask about his complaint or start an investigation.

17. On August 21, 2023, while District Manager, Ashley Buchanan ("Buchanan"), was visiting the store, she asked Plaintiff whether anything important was going on at the store. Plaintiff informed Buchanan about Crespo's harassing conduct and the filing of his sexual harassment complaint with Defendant. To Plaintiff's knowledge, Buchanan took no action as a result of his complaint of sexual harassment.

18. Any investigation into Crespo's unlawful conduct did not occur until the end of August 2023–an entire month after Plaintiff made his initial complaint to Defendant. Although

Defendant ultimately terminated Crespo in or about September 2023, Plaintiff was subjected to several more weeks of sexual harassment during Defendant's deliberate and unreasonable period of inaction on Plaintiff's complaints.

19.    In addition to waiting several weeks before investigating Plaintiff's complaints against Crespo. Defendant embarked on a pattern of unlawful retaliation against Plaintiff proximate in time to his sexual harassment complaints.

20.    For example, Plaintiff had a pre-approved vacation planned, which Defendant required him to cancel by waiting to start the investigation until right before Plaintiff's vacation was scheduled. Defendant told Plaintiff he would have to cancel his vacation because Defendant would need him on-site due to Crespo's suspension.

21.    Defendant also inflated Plaintiff's workload during that time by stating it needed managers on-site. However, Defendant did not inform Plaintiff until weeks after Crespo's termination that he had the hours available to hire extra help. In those weeks that Plaintiff could have brought in extra help, Plaintiff was given so much extra work that he routinely worked overtime off-the-clock. In fact, Defendant told him the work needed to be done but it would not pay for his overtime.

22.    Additionally, Defendant had previously been discussing Plaintiff joining the Store Manager Training Program, a position he was fulfilling in Crespo's absence without the pay raise. However, after Crespo's termination, Defendant informed Plaintiff that he was no longer being considered for the training program.

23.    Every adverse employment listed above occurred only after Plaintiff's complaints and were in direct retaliation for the complaints.

24.     On or about October 9, 2023, Plaintiff's working conditions were so intolerable that he felt he had no other option but to resign from his position.

25.     On or about February 23, 2024, Plaintiff filed a charge of employment discrimination against Defendant with the U.S. Equal Employment Opportunity Commission (Charge No. 471-2024-02747).

26.     On February 11, 2026, the EEOC issued a Notice of Right to Sue letter to Plaintiff. This Complaint is timely filed within the 90-day period.

**COUNT I:**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. §2000e, *et seq*. – SEXUAL HARASSMENT**

27.     Plaintiff incorporates by reference all prior paragraphs herein.

28.     At all relevant times, Defendant was Plaintiff's "employer" as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b) ("Title VII").

29.     Plaintiff is a member of the classes of individuals protected by Title VII. 42 U.S.C. §200e(f); 42 U.S.C. § 2000e-2(a)(1).

30.     At all relevant times, Defendant had a duty under Title VII not to discriminate against Plaintiff, including a duty to provide a work environment free from sexual harassment.

31.     Plaintiff was repeatedly subjected to egregious and sexually harassing conduct by Crespo during his employment.

32.     The sexual harassment included, but was not limited to, unwelcome comments directed at Plaintiff, unwanted explicit text messages, comments and conduct of an offensive and sexual nature directed at Plaintiff, and the creation of a hostile work environment.

33.     The sexual harassment substantially interfered with Plaintiff's employment with Defendant.

34.    Defendant violated Plaintiff's civil rights under Title VII by subjecting him to unwelcome, offensive, and sexually harassing conduct that was perpetrated upon Plaintiff by his coworker.

35.    Despite Defendant having knowledge of the sexual harassment, Defendant failed to appropriately remedy the harassment.

36.    Defendant violated Plaintiff's civil rights under Title VII in ways which included, but were not limited to, the following:

   a. Subjecting Plaintiff to a pattern and practice of sexual harassment resulting in a hostile work environment.

   b. Failing to take prompt and corrective action to address Plaintiff's repeated complaints about sexual harassment.

   c.  Failing to follow its corporate policies and procedures including, but not limited to, progressive discipline policy, non-retaliation and non-discrimination policies.

   d. Constructively terminating his employment.

   e. Other acts and/or omissions that may become known during discovery.

37.    As a direct and proximate result of Defendant's violations of Title VII, Plaintiff suffered damages including but not limited to, loss of compensation and fringe benefits, non-economic damages for mental and emotional distress, and attorney fees and costs.

**COUNT II:**
**VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT,**
**MCL § 37.2101, *et. seq.* – SEXUAL HARASSMENT**

38.    Plaintiff incorporates by reference all prior paragraphs herein.

39.    Defendant was Plaintiff's employer as defined by Michigan's Elliot-Larsen Civil Rights Act, MCL § 37.2201, *et. seq.* ("ELCRA").

40.    The ELCRA provides: "Discrimination because of sex includes sexual harassment" and "[s]exual harassment means unwelcome sexual advances, requests for sexual favors, and other

6

verbal or physical conduct or communication of a sexual nature under the following conditions . . . the conduct or communication has the purpose or effect of substantially interfering with an individual's employment." MCL § 37.2103(k)(iii).

41.    At all relevant times, Defendant had a duty under the ELCRA not to discriminate against Plaintiff, including a duty to provide a work environment free from sexual harassment.

42.    Plaintiff was repeatedly subjected to egregious and sexually harassing conduct by Crespo during his employment.

43.    The sexual harassment included, but was not limited to, unwelcome comments directed at Plaintiff, unwanted explicit text messages, comments and conduct of an offensive and sexual nature directed at Plaintiff, and the creation of a hostile work environment.

44.    The sexual harassment substantially interfered with Plaintiff's employment with Defendant.

45.    Defendant violated Plaintiff's civil rights under the ELCRA by subjecting him to unwelcome, offensive, and sexually harassing conduct that was perpetrated upon Plaintiff by his coworker.

46.    Despite Defendant having knowledge of the sexual harassment, Defendant failed to appropriately remedy the harassment.

47.    Defendant violated Plaintiff's civil rights under the ELCRA in ways which included, but were not limited to, the following:

    a. Subjecting Plaintiff to a pattern and practice of sexual harassment resulting in a hostile work environment.

    b. Failing to take prompt and corrective action to address Plaintiff's repeated complaints about sexual harassment.

    c.  Failing to follow its corporate policies and procedures including, but not limited to, progressive discipline policy, non-retaliation and non-discrimination policies.

    d.   Constructively terminating his employment.

    e.   Other acts and/or omissions that may become known during discovery.

48.    As a direct and proximate result of Defendant's violations of the ELCRA, Plaintiff suffered damages including but not limited to, loss of compensation and fringe benefits, non-economic damages for mental and emotional distress, and attorney fees and costs.

**WHEREFORE**, Plaintiff requests that this Court enter a Judgement in his favor and award a monetary judgement for consequential and incidental damages including, but not limited to, back pay, front pay, fringe benefits, damages for emotional and mental distress, and attorney fees and costs.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: May 22, 2025               Respectfully submitted,

                              */s/Laura M. Supanich*

                              Jonathan Melmed (CA SBN 290218)
                              Laura Supanich (P85849) (CA SBN 314805)
                              **MELMED LAW GROUP, P.C.**
                              1801 Century Park East, Suite 850
                              Los Angeles, CA 90067
                              (310) 824-3828
                              jm@melmedlaw.com
                              lms@melmedlaw.com

                              *Attorneys for Plaintiff*

8